**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **IN RE THE MATTER OF THE** | Case No. CV 16-9026 JVS (SS) |
| **EXTRADITION OF EDGAR ORLANDO** | **CERTIFICATION OF** |
| **CAMELO-GRILLO** | **EXTRADITABILITY** |
| | **[Dkt. No. 20]** |

**I.**

**INTRODUCTION**

This is a proceeding under 18 U.S.C. § 3184 pursuant to a request by the Republic of Colombia ("Colombia"), through the United States Government ("the Government"), for the extradition of Colombian national Edgar Orlando Camelo-Grillo ("Camelo-Grillo") under the provisions of the Treaty of Extradition between the United States of America and the Republic of Colombia, signed on September 14, 1979, S. Treaty Doc. No. 97-8 (1981) ("Treaty").

On December 6, 2016, the Government filed a Request for Extradition, ("Request," Dkt. No. 16), supported by three multi-

document exhibits.[1]  (Dkt. No. 17).  On January 13, 2017, the Government filed a Memorandum of Law in Support of Extradition. ("Memo.," Dkt. No. 20).  Camelo-Grillo filed an Opposition on March 16, 2017.  ("Opp.," Dkt. No. 24).  The Government filed a Reply on March 27, 2017, including one multi-document exhibit.[2]  ("Reply," Dkt. No. 25).  On June 6, 2017, the Court conducted a hearing

---

[1]  Exhibit A contains the declaration of Tom Heinemann, a legal adviser in the Office of the Legal Adviser for the Department of State ("Heinemann Decl."). Attached to the Heinemann declaration are copies of the diplomatic notes formally requesting Camelo-Grillo's extradition and the Treaty pursuant to which extradition is sought. (Request at 1).  Exhibit B comprises the documentary evidence, in the original Spanish, that accompanied Colombia's extradition request to the State Department. (Id.).  Finally, Exhibit C is an English translation of the documents in Exhibit B. (Id.).

The Court will cite to these Exhibits simply as "Exh. A," "Exh. B," and "Exh. C" without any further qualifier.  Exhibit C is consecutively paginated, but Exhibit A is not.  Accordingly, the Court's citations to the attachments to Heinmann's declaration in Exhibit A will be to the CM/ECF page numbers for that Exhibit in Dkt. No. 17.

[2] Exhibit A to the Reply contains a diplomatic note to which are attached (1) a request for a legal opinion letter sent by the Colombian Ministry of Justice and Law to the International Legal Affairs division of the Colombian Ministry of Foreign Affairs; and (2) a letter by Judge Jorge Enrique Blanco Diagama of the Colombian Court of Execution of Sentences and Precautionary Measures regarding whether Camelo-Grillo's retrial in 2001 constituted double jeopardy under Colombian law. As submitted, the documents, all in the original Spanish, were neither authenticated nor accompanied by an English translation.  However, on May 17, 2017, the Government filed a "Notice of Manual Filing" that certified the authenticity of the documents submitted with the Reply and provided English translations.  (Dkt. No. 28).  Accordingly, citations to Exhibit A of the Reply will be to the translations at Dkt. No. 28 ("Reply Exh. A").  Because Reply Exhibit A is not consecutively paginated, the Court will use the CM/ECF numbers.

pursuant to 18 U.S.C. § 3184.[3]  For the reasons set forth below, the Court hereby CERTIFIES to the Secretary of State of the United States the extraditability of Camelo-Grillo on the charged offenses.

## II.

### BACKGROUND FACTS

The instant extradition request arises from a 2001 decision of the Special Criminal Circuit Court 6 in the Judicial District of Bogota.  According to the facts set forth in that decision, late on July 11, 1992, three drive-by shooters in Bogota, Colombia killed a man named John Henry Cely-Pinilla and fled.  (Exh. C at 88, 90, 92).  Shortly thereafter, police officers Julio Cesar Gutierrez-Garcia and Juan Sepulveda-Enciso, tipped off by a witness who saw where the shooters had taken refuge, arrived at a nearby residence in pursuit of the killers.  (Id.).  Shots were fired at the officers from inside the home, one of which struck and killed Officer Gutierrez-Garcia.  (Id. at 88, 90).  Lieutenant Leonardo Baron-Salazar followed a trail of blood up to the third floor of the home and concluded that one of the home's occupants had leapt through an open window to a neighboring residence.  (Id. at 90). There Lieutenant Baron-Salazar found Camelo-Grillo, injured and bloodied, with a revolver, five cartridges and a grenade.  (Id. at

---

[3] At the hearing, the Court afforded the Parties an opportunity to submit additional briefing on whether Camelo-Grillo's asylum application is a bar to his extradition, as counsel had contended during oral argument.  On June 27, 2017, Camelo-Grillo's counsel filed a "Status Report" conceding that the asylum application "does not present a viable defense to extradition."  (Dkt. No. 30 at 1).

90-91, 93).  Cely-Pinilla's brother, an eyewitness to the drive-by shooting, later identified Camelo-Grillo as one of the shooters in the vehicle.  (Id. at 92).

One year later, on July 12, 1993, a criminal court convicted Camelo-Grillo of the murders of Cely-Pinilla and Officer Gutierrez-Garcia, and of illegal carriage of weapons, and sentenced him to a sixteen-year prison term.  (Id. at 88; see also id. at 62-69 (July 1993 decision)).   Three months later, on September 15, 1993, despite the trial court's certainty that Camelo-Grillo had committed both murders, a reviewing court vacated the conviction for the murder of Cely-Pinilla because the indictment did not properly lay out charges for that crime.  (Id. at 88; see also id. at 70-83 (September 1993 decision)).  At the same time, the court affirmed the convictions for the murder of Officer Gutierrez-Garcia and for illegal carriage of weapons.  (Id. at 83).  The court then reduced Camelo-Grillo's sentence to a term of ten years and three months on those two surviving convictions.  (Id.).

Just under two years later, on July 26, 1995, the Colombian Supreme Court of Justice, Criminal Cassation Bench, vacated Camelo-Grillo's original murder convictions on procedural grounds.  (Id. at 89; see also id. at 41-52 (July 1995 decision)).  According to the court, Camelo-Grillo's case should have been assigned to a newly-created "jurisdiction, which was assigned the duties of investigation and trial" for certain "special" matters, including

homicides of police personnel.[4] (Id. at 45). Pending reassignment of the murder investigation to the proper tribunal, the court granted Camelo-Grillo "the benefit of provisional release" contingent on the lodgment of a surety and his signing a "commitment" as provided in Article 419 of the Colombian Criminal Procedure Code. (Id. at 50).

The Colombian Special Terrorism Unit issued an indictment against Camelo-Grillo on April 16, 1996 for the crime of homicide "under Article 8 of Decree 2790/1990, amended by Article 1 of Decree 099/1991[,] and Article 2.2 of Decree 2326/1991, adopted as permanent legislation under Article 12 of Decree 2266/1991." (Id. at 89). Special Criminal Court 6 in Bogota held a public hearing on April 18, 2001, (id.), and on May 8, 2001, convicted Camelo-Grillo in absentia of the murder of Officer Gutierrez-Garcia. (Id. at 88) (stating that the public hearing in Camelo-Grillo's 2001 "criminal trial [was] conducted in his absence"). The court sentenced Camelo-Grillo to a fifteen-year term of imprisonment, "taking account of the time during which he [had previously been] detained due to this case." (Id. at 96). Arrest warrants issued on September 18, 2001, (id. at 86-87), and appear to have been re-issued by the Sentences and Precautionary Measures Court in Bogota several times, including on April 12, 2013, (id. at 12-13), and June 9, 2014. (Id. at 14-15). The Government represents, and

---

[4] While the Supreme Court declared the murder convictions a nullity, it affirmed the conviction for unlawful carriage of weapons because the "investigation and trial of which [Camelo-Grillo] was the object was pursued by the natural and originally competent authority" on that count. (Id. at 46).

Camelo-Grillo does not dispute, that the warrants "remain active and enforceable." (Memo. at 3).

On June 9, 2015, Colombia tendered a diplomatic note to the Department of State requesting Camelo-Grillo's extradition to serve the remainder of his sentence for Officer Gutierrez-Garcia's murder. (Exh. A at 5). Fourteen months later, on August 12, 2016, the Government filed a complaint in this Court for Camelo-Grillo's arrest and extradition. See United States v. Edgar Orlando Camelo-Grillo, C.D. Cal. Case No. M 16-1621 DUTY, Dkt. No. 1.[5] Camelo-Grillo was captured in Los Angeles three days later, on August 15, 2016. (Exh. A at 7). On September 29, 2016, Colombia submitted another diplomatic note to the State Department, (id. at 6), to which it attached a letter from the Execution of Sentences and Precautionary Measures Court 24 in Bogota responding to the Government's question in a "Verbal Note of September 12, 2016" concerning the statute of limitations in Camelo-Grillo's case. (Id. at 7-8). The instant Request for Extradition followed on December 6, 2016.

**III.**

**LEGAL STANDARDS**

"'Extradition from the United States is a diplomatic process' that is initiated when a foreign nation requests extradition of an individual from the State Department." Manta v. Chertoff, 518 F.3d

---

[5] That action was consolidated with the instant action on December 6, 2016 upon the filing of the Request.

1134, 1140 (9th Cir. 2008) (quoting <u>Prasoprat v. Benov</u>, 421 F.3d
1009, 1010 (9th Cir. 2005)).  As such, "[e]xtradition is a matter
of foreign policy entirely within the discretion of the executive
branch, except to the extent that the statute [18 U.S.C. § 3184]
interposes a judicial function."  <u>Vo v. Benov</u>, 447 F.3d 1235, 1237
(9th Cir. 2006).  The Ninth Circuit has recently summarized the
extradition process, and the judiciary's limited role in it, as
follows:

> The process begins when the foreign state seeking
> extradition makes a request directly to the U.S.
> Department of State.  If the State Department determines
> that the request falls within the governing extradition
> treaty, a U.S. Attorney files a complaint in federal
> district court indicating an intent to extradite and
> seeking a provisional warrant for the person sought.
> See [<u>Vo</u>, 447 F.3d at 1237]; <u>see also</u> 18 U.S.C. § 3184.
> Once the warrant is issued, the district court, which
> may include a magistrate judge, conducts a hearing to
> determine "whether there is 'evidence sufficient to
> sustain the charge under the provisions of the proper
> treaty or convention,' or, in other words, whether there
> is probable cause."  <u>Vo</u>, 447 F.3d at 1237 (quoting in
> part 18 U.S.C. § 3184).
>
> The Supreme Court has described these extradition
> hearings to determine probable cause as akin to a grand
> jury investigation or a preliminary hearing under

7

Federal Rule of Criminal Procedure 5.1. See, e.g., Charlton v. Kelly, 229 U.S. 447, 461-62, 33 S. Ct. 945, 57 L. Ed. 1274 (1913); Benson v. McMahon, 127 U.S. 457, 463, 8 S. Ct. 1240, 32 L. Ed. 234 (1888); [Ronald J. Hedges, International Extradition: A Guide for Judges (Federal Judicial Center 2014) ("FJC Manual")] at 10. . . . We have said that the extradition court's review is limited to determining, first, whether the crime of which the person is accused is extraditable, that is, whether it falls within the terms of the extradition treaty between the United States and the requesting state, and second, whether there is probable cause to believe the person committed the crime charged. See, e.g., Cornejo-Barreto v. Seifert, 218 F.3d 1004, 1009 (9th Cir. 2000), overruled on other grounds by Trinidad y Garcia v. Thomas, 683 F.3d 952, 957 (9th Cir. 2012) (en banc); see also Zanazanian v. United States, 729 F.2d 624, 625-26 (9th Cir. 1984) (describing the inquiry as "whether: [1] the extradition judge had jurisdiction to conduct proceedings; [2] the extradition court had jurisdiction over the fugitive; [3] the extradition treaty was in full force and effect; [4] the crime fell within the terms of the treaty; and [5] there was competent legal evidence to support a finding of extraditability").

[¶] . . . [T]he scope of the extradition court's review "is limited to a narrow set of issues concerning the

existence of a treaty, the offense charged, and the
quantum of evidence offered.  The larger assessment of
extradition and its consequences is committed to the
Secretary of State."  [United States v. Kin-Hong, 110
F.3d 103, 110 (1st Cir. 1997)]. . . . [C]ourts have
emphasized that "[t]he person charged is not to be tried
in this country for crimes he is alleged to have
committed in the requesting country.  That is the task
of the . . . courts of the other country."  [Eain v.
Wilkes, 641 F.2d 504, 508 (7th Cir. 1981)]; see FJC
Manual at 10 ("An extradition hearing is not a criminal
trial and is not intended to ascertain guilt.").  So
long as "the judicial officer determines that there is
probable cause, he 'is required to certify the
individual as extraditable to the Secretary of State.'"
Vo, 447 F.3d at 1237 (quoting Blaxland v. Commonwealth
Dir. of Pub. Prosecutions, 323 F.3d 1198, 1208 (9th Cir.
2003)).

Given the limited nature of extradition proceedings,
neither the Federal Rules of Evidence nor the Federal
Rules of Criminal Procedure apply.  See Mainero v. Gregg,
164 F.3d 1199, 1206 (9th Cir. 1999); see also Fed. R.
Crim. P. 1(a)(5)(A).  Instead, 18 U.S.C. § 3190 provides
that evidence may be admitted as long as the evidence is
authenticated and would "be received for similar
purposes by the tribunals of the foreign country from
which the accused party shall have escaped."  The

accused, however, does not have the right to introduce evidence in defense because that would require the government seeking his extradition "to go into a full trial on the merits in a foreign country." [Collins v. Loisel, 259 U.S. 309, 316 (1922)] (quoting In re Wadge, 15 F. 864, 866 (S.D. N.Y. 1883)). . . . [¶]

If the extradition court determines that there is probable cause to extradite, it enters an order certifying extradition to the Secretary of State, who ultimately decides whether to surrender the individual to the requesting state.  18 U.S.C. § 3186; Vo, 447 F.3d at 1237; [Quinn v. Robinson, 783 F.2d 776, 789 (9th Cir. 1986)]; Exec. Order No. 11,517, 35 Fed. Reg. 4,937 (Mar. 19, 1970), reprinted in 18 U.S.C. § 3193 Historical & Revision Notes.

Santos v. Thomas, 830 F.3d 987, 991–93 (9th Cir. 2016) (en banc); see also Manta, 518 F.3d at 1140 (the court "must certify the extradition" if it concludes that "the crime is extraditable" and that "there is probable cause to sustain the charge").  A certification of extradibility "can only be challenged via a writ of habeas corpus, because the order is not final and there is no other statutory provision for direct appeal of an extradition order."  Santos, 830 F.3d at 993.

\\

\\

\\

**IV.**

**DISCUSSION**


For the court to certify that Camelo-Grillo is extraditable, the Government must establish that "(1) the extradition judge ha[s] jurisdiction to conduct proceedings; (2) the extradition court ha[s] jurisdiction over the fugitive; (3) the extradition treaty [is] in full force and effect; (4) the crime [falls] within the terms of the treaty; and (5) there [is] competent legal evidence to support a finding of extraditability." Manta, 518 F.3d at 1140; see also Santos, 830 F.3d at 991 (citing Zanazian, 729 F.2d at 625-26)). All of these criteria are satisfied here.

**A.    Authority Of Judicial Officer**

Section 3184 provides that a magistrate judge is competent to hold the hearing required under the statute when "authorized to do so by a court of the United States." 18 U.S.C. § 3184; see also Santos, 830 F.3d at 991 (the district court, "which may include a magistrate judge," is charged with conducting a section 3184 hearing). Here, the Central District's General Order 05-07 delegates the authority to hear extradition matters to magistrate judges. Accordingly, the undersigned is authorized to conduct extradition proceedings.

\\

\\

\\

\\

11

**B.    Jurisdiction Over The Individual Sought**

A district court has jurisdiction over a fugitive found within its jurisdictional boundaries. See 18 U.S.C. § 3184 (a judge "may, upon complaint made under oath, charging any person found within his jurisdiction, . . . issue his warrant for the apprehension of the person so charged"); see also Caplan v. Vokes, 649 F.2d 1336, 1338 n.2 (9th Cir. 1981) (same); accord Cohen v. Benov, 374 F. Supp. 2d 850, 855 (C.D. Cal. 2005). It is undisputed that Camelo-Grillo was arrested in Los Angeles, and thus was "found" in this district. See generally United States v. Edgar Orlando Camelo-Grillo, C.D. Cal. Case No. M 16-1621 DUTY. Accordingly, the Court has personal jurisdiction over Camelo-Grillo.

**C.    Treaty In Full Force And Effect**

Section 3184 conditions extradition on the existence of a valid treaty between the United States and the foreign government. Tom Heinemann, of the Office of the Legal Adviser for the Department of State, affirms in his declaration that the extradition treaty between the United States and Colombia is "in full force and effect." (Heinemann Decl. ¶ 3; see also Exh. A at 11-25 (Treaty)). The State Department's determination of the continuing validity of a treaty is entitled to deference. See Then v. Melendez, 92 F.3d 851, 854 (9th Cir. 1996) (the "continuing validity" of an extradition treaty "presents a political question" for the State Departments of the two countries, whose decisions on the matter are controlling). The Ninth Circuit instructs that "the exchange

of diplomatic letters" between the United States and a foreign government regarding an extradition request is compelling evidence, even in the absence of a declaration, of the "respective State Departments' views that the . . . Treaty continues to apply between them." Id. Here, the Treaty's continuing validity is undisputed.

**D.     Extraditable Offense**

The Government must also prove that the offense charged is an extraditable offense covered under the Treaty and that Camelo-Grillo's actions constituting the offense would be criminal in both the United States and Colombia. Camelo-Grillo's 2001 conviction is for homicide under Article 8 of Columbia's criminal code. (Exh. C at 89). Article 8 criminalizes "crimes of illegal constraint, torture, homicide and personal injury committed against any of the persons" listed in Article 6. (Id. at 33). Article 6 protects, among others, members of the National Police, like Officer Gutierrez-Garcia. (Id. at 32).

Article 2, paragraph 1 of the Treaty provides that acts are extraditable if they fall within any of the offenses listed in the Appendix, or, even if they are not listed, if they are punishable under both the federal laws of the United States and the laws of Colombia. (Exh. A at 16). The Appendix lists murder as an extraditable offense.[6] (Id. at 24). When considering whether a

--------------------

[6] Article 2, paragraph 3 of the Treaty further provides that extradition shall be granted only if the offense is punishable by imprisonment of one year, and, if the person has already been

13

fugitive's acts fall within the extraditable offenses encompassed by a particular treaty, courts must construe the treaty liberally. Manta, 518 F.3d at 1144; see also Cucuzzella v. Keliikoa, 638 F.2d 105, 107 n.3 (9th Cir. 1981) ("[T]reaties should be construed to enlarge the rights of the parties.") (citing Factor v. Laubenheimer, 290 U.S. 276, 293-94 (1933)). Heinemann's declaration confirms that the offense for which Colombia seeks Camelo-Grillo's extradition -- murder of a police officer -- is "covered by Article 2 of the Treaty." (Heinemann Decl. ¶ 5).

Under the principle of "dual criminality," not only must an offense fall under the rubric of extraditable offenses in the applicable treaty, but the acts constituting the offense must also be "criminal in both jurisdictions." Caplan, 649 F.2d at 1343. The name by which the crime is described in the two countries need not be the same; nor is it necessary that the scope of liability for the crimes be coextensive. Collins, 259 U.S. at 312. Instead, "dual criminality exists if the 'essential character' of the acts criminalized by the law of each country are the same and the laws are 'substantially analogous.'" Manta, 518 F.3d at 1141 (quoting Oen Yin-Choy v. Robinson, 858 F.2d 1400, 1404 (9th Cir. 1988)); see also Matter of Extradition of Russell, 789 F.2d 801, 803 (9th Cir. 1986) ("'It is enough if the particular variety [of conduct] was criminal in both jurisdictions.'") (quoting Kelly v. Griffin, 241 U.S. 6, 14 (1916)). In determining whether the fugitive's acts would be a crime in the United States, the court may look to

_____

convicted and sentenced, if "at least" six months of the sentence remain to be served. (Exh. A at 16-17).

14

"federal law or, if none, the law of the place where the fugitive is found or, if none, the law of the preponderance of the states." Cucuzzella, 638 F.2d 1at 107.

Here, there is no dispute that the crime of which Camelo-Grillo was convicted -- murder -- is covered by the treaty between the United States and Colombia. In addition, the dual criminality requirement is easily met because if Camelo-Grillo's criminal activity had occurred in the United States, it would be subject to prosecution under 18 U.S.C. § 1111, which criminalizes first and second degree murder. Accordingly, the Court finds that the crime for which Colombia seeks Camelo-Grillo's extradition is an extraditable offense.

**E.    Probable Cause**

Finally, the Court must determine whether there is "evidence sufficient to sustain the charge," i.e., "probable cause to believe the person committed the crime charged." Santos, 830 F.3d at 991 (internal quotation marks and citation omitted). "The probable cause standard applied in extradition proceedings . . . has been described as 'evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt.'" Sidali v. I.N.S., 107 F.3d 191, 199 (3d Cir. 1997) (quoting United States v. Wiebe, 733 F.2d 549, 553 (8th Cir. 1984)); see also In re Extradition of Trinidad, 754 F. Supp. 2d 1075, 1081 (N.D. Cal. 2010) (same); Matter of Extradition of Moglia, 813 F. Supp. 1438, 1442 (D. Haw. 1993)

(same). Probable cause means a "fair probability" in light of the totality of the circumstances, guided by considerations of "practicality, common sense, [and] a fluid and nontechnical conception of probable cause . . . ." United States v. Gourde, 440 F.3d 1065, 1069-71 (9th Cir. 2006) (en banc). The court need only determine whether there is competent evidence to justify holding the respondent for trial, not whether the evidence is sufficient to justify conviction. Collins, 259 U.S. at 316; see also United States ex rel. Sakaguchi v. Kaulukukui, 520 F.2d 726, 730 (9th Cir. 1975) ("The magistrate's function is to determine whether there is 'any' evidence sufficient to establish reasonable or probable cause[.]").[7]

The admissibility of evidence in extradition matters is controlled by 18 U.S.C. § 3190, which provides that in extradition hearings, documents may be received in evidence if they are "properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped . . . ." 18 U.S.C. § 3190. "[A]uthentication is the only requirement for admissibility of evidence under general United States extradition law." Oen Yin-Choy, 858 F.2d at 1406 (citation omitted); see also Barapind v. Enomoto, 400 F.3d 744, 748 (9th Cir. 2005) (en banc) (per curiam) ("'With regard to the admissibility of evidence, the general United States extradition law requires only that the

_____

[7] As "part of the magistrate judge's probable cause analysis," the court is "required to determine whether the party before the court is the party named in the extradition complaint." Manta, 518 F.3d at 1143 (internal citation omitted).

evidence submitted be properly authenticated.'") (quoting <u>Emami v.</u> <u>United States Dist. Court for the N. Dist. of Cal.</u>, 834 F.2d 1444, 1451 (9th Cir. 1987)).  Competent evidence includes hearsay evidence, "and the usual rules of evidence are not applicable in this context."  <u>Then</u>, 92 F.3d at 855 (citations omitted).

Where, as here, the fugitive has already been convicted, the conviction is often considered dispositive of the existence of probable cause.  As the Fourth Circuit has explained,

> The principle that foreign convictions generally constitute probable cause under § 3184 is rooted in comity. . . . "Extradition proceedings are grounded in principles of international comity, which would be ill-served by requiring foreign governments to submit their purposes and procedures to the security of United States courts."  <u>Koskotas v. Roche</u>, 931 F.2d 169, 174 (1st Cir. 1991).  To this end, "[q]uestions about the procedural fairness of another sovereign's justice system . . . are within the purview of the executive branch," as are questions about "whether the requesting nation is sincere in its demand for extradition or is merely using the process as a subterfuge."  [<u>Ordinola v. Hackman</u>, 478 F.3d 588, 608 (4th Cir. 2007)] (Traxler, J., concurring).  Therefore, we refrain "from delving into and assessing the competence of the requesting government's system of justice."  <u>Id.</u>  To then conclude that foreign convictions "do not constitute probable

cause in the United States would require United States judicial officers to review trial records and, consequently, substitute their judgment for that of foreign judges and juries. Such an inquiry would be inconsistent with principles of comity." [Spatola v. United States, 925 F.2d 615, 618 (2nd Cir. 1991)].

Haxhiaj v. Hackman, 528 F.3d 282, 290-91 (4th Cir. 2008); see also Skaftouros v. United States, 667 F.3d 144, 156 (2d Cir. 2011) ("[I]t has long been recognized that an extradition judge should avoid making determinations regarding foreign law.").

Accordingly, it is well accepted that a "foreign conviction entered after a trial at which the defendant was present suffices, in and of itself, to establish probable cause." Haxhiaj, 528 F.3d at 290; see also Sidali, 107 F.3d at 199 (same). However, even a conviction obtained in absentia that is supported by the foreign court's written decision setting forth the facts underlying the conviction has been found to "afford[] a reasonable basis upon which to find probable cause." Id. at 289; see also United States v. Struga, __ F. Supp. 3d __, 2017 WL 491937, at *6-7 (E.D. Mich. Feb. 7, 2017) (issuing certification of extraditability despite concerns that the accused's murder conviction was obtained in absentia); Arambasic v. Ashcroft, 403 F. Supp. 2d 951, 962 (D. S.D. 2005) ("[T]he fact that [the accused] was convicted in absentia does not alone warrant a denial of extradition. However, where a conviction is the result of a trial in absentia, the conviction is regarded merely as a charge, requiring independent proof of

probable cause.") (citing M. Basiouni, International Extradition: United States Law and Practice, Ch. VIII, § 4.8).

The Court may consider the documents submitted by Colombia in support of its extradition request because the documents have been properly authenticated. (Heinemann Decl. ¶¶ 2-3, 6; Exh. B at i-ii; Exh. C at i; Reply Exh. A at 4). This evidence overwhelmingly establishes that there is probable cause to believe that Camelo-Grillo murdered Officer Gutierrez-Garcia.[8]

There are two relevant outstanding convictions that inform the Court's probable cause determination: the July 1993 conviction for illegal carriage of weapons, which the Supreme Court affirmed in 1995, and the 2001 conviction for the murder of Officer Gutierrez-Garcia. Camelo-Grillo was present for his original trial, which resulted in convictions for the murders of Cely-Pinilla and Officer Gutierrez-Garcia, and for illegal carriage of weapons. (Exh. C at 62-69). However, as discussed above, Colombia's Supreme Court of Justice, Criminal Cassation Bench, later declared the murder convictions (but not the weapons conviction) to be a nullity for having been obtained in an improper jurisdiction. Accordingly, the 1993 convictions cannot, by themselves, directly establish probable cause for Officer

---

[8] Colombia's extradition packet includes documentation establishing Camelo-Grillo's identity, including a fingerprint report, (Exh. C at 27), and information about his height, weight, parents' names, department of birth, etc. (Id. at 20). Camelo-Grillo does not claim mistaken identity. Accordingly, the Court is satisfied that the person in custody is the Camelo-Grillo sought by the extradition request.

Gutierrez-Garcia's murder, although the Court must accept as proved the facts supporting the illegal carriage of weapons conviction to the extent that they relate to the murder. The other relevant conviction is, of course, the 2001 in absentia murder conviction. The Court adopts the approach taken by the Fourth Circuit in Haxhiaj and other courts, in which an in absentia conviction, supported by the court's summary of the evidence presented, may provide probable cause.[9] Haxhiaj, 528 F.3d at 289.

The evidence shows that the chain of events -- from the drive-by shooting of Cely-Pinilla, to the shoot-out at the home where the perpetrators took refuge and killed Officer Gutierrez-Garcia, to Camelo-Grillo's capture with unlawful weapons in a neighboring residence -- was continuous and swift. (See Exh. C at 93). With respect to the conviction for illegal carriage of weapons, the Supreme Court found that Camelo-Grillo had in his possession a "home made" revolver, five cartridges, and a grenade reserved for use by the Colombian army. (Id. at 42, 88, 91). At the very least, this is conclusive evidence that Camelo-Grillo was in the area and had the means to shoot Officer Gutierrez-Garcia. Additional evidence supporting the 2001 murder conviction provides probable cause to believe that Camelo-Grillo was inside the home with his co-conspirators when the shoot-out occurred. An eyewitness put Camelo-Grillo in the drive-by shooters' vehicle,

[9] All of the court decisions in this case included detailed, consistent summaries of the evidence. However, for the sake of simplicity, the Court's citations below are to the 1995 Supreme Court decision that affirmed Camelo-Grillo's conviction for illegal carriage of weapons, and to the 2001 decision finding Camelo-Grillo guilty of the murder of Officer Gutierrez-Garcia.

(id. at 92), and another witness directed police to the home where the shooters had fled. (Id. at 42, 92). When the shooting stopped, Camelo-Grillo was found bleeding, with a fresh gunshot wound to his buttocks, which strongly suggests that he was hit by one of the officers during the shoot-out. (Id. at 42, 46, 91). There is also probable cause to believe that Camelo-Grillo actively participated in the shoot-out. Forensic evidence established that when Camelo-Grillo was found, his revolver had recently been fired, (id. at 91), which strongly suggests that he actually shot the gun. (Id. at 42, 90). Furthermore, Camelo-Grillo appeared desperate to avoid capture, as he jumped from the third floor of the home where he was hiding through an open window into a neighboring residence, despite his recent wounds. (Id. at 42, 88, 91).

In sum, the evidence supplied by Colombia is competent and establishes that there is probable cause to believe that Camelo-Grillo murdered Officer Gutierrez-Garcia in violation of Article 8 of the Colombian criminal code.

**F.   Camelo-Grillo's Defenses**

Camelo-Grillo raises two primary arguments in his Opposition. First, he claims that the Treaty prohibits extradition where conviction for the offense would constitute double jeopardy, and, alternatively, the dual criminality requirement cannot be met because Camelo-Grillo's 2001 retrial would be prohibited on double jeopardy grounds in the United States. (Opp. at 1-7). Second, Camelo-Grillo maintains that Article 14(7) of the International

Covenant of Civil and Political Rights ("ICCPR") also prohibits double jeopardy. (Id. at 7-8). Both of these arguments fail.

**1.   Double Jeopardy**

Camelo-Grillo contends that the Court may not certify his extradibility because his 2001 conviction was obtained in violation of his rights against double jeopardy. According to Camelo-Grillo, the Treaty bars extradition where the fugitive would be subjected to double jeopardy, and even if the conviction did not violate his rights in Colombia, there can be no dual criminality because his 2001 prosecution would have been barred on double jeopardy grounds in the United States.

As a threshold matter, even if Camelo-Grillo's 2001 conviction had been obtained in violation of his rights against double jeopardy under Colombian law, the Treaty's proscription against extradition in cases of double jeopardy would not apply. Article 5(1) of the Treaty specifically provides: "Extradition shall not be granted when the person sought has been tried and convicted or acquitted by the Requested State for the offense for which extradition is requested." (Exh. A at 17). Here, Colombia is the Requesting State, and the United States is the "Requested State." The plain terms of the Treaty proscribe extradition only where the fugitive was tried and either convicted or acquitted in the Requested State (i.e., the United States) and would be subject to retrial for the same offense if he were to be extradited to the Requesting State (i.e., Colombia).

A requesting party's retrial of a matter already adjudicated by the requested party would infringe on the comity concerns at the heart of extradition proceedings. However, those concerns are not at issue where the prior proceedings were conducted in the requesting party's jurisdiction. Questions about the "procedural fairness" or "competence" of the foreign sovereign's justice system are matters for the executive branch, not the courts, to consider in extradition proceedings. Haxhiaj, 528 F.3d at 290-91. Accordingly, Article 5(1) will not bar extradition. See In re Extradition of Hurtado, 622 F. Supp. 2d 1354, 1356 (S.D. Fla. 2009) ("Because the treaty between the United States and Peru calls for double jeopardy protection only if the respondent has been convicted or acquitted by the requested state, here the United States, double jeopardy is not a defense to the extradition of Hurtado[,] who was tried and acquitted in the requesting state, Peru.").

Camelo-Grillo's dual criminality argument is also misplaced. The dual criminality requirement does not consider possible affirmative defenses or procedural rules that would bar prosecution by the requesting or requested party. The question is whether the fugitive's acts would be criminal in both countries. See Manta, 518 F.3d at 1141 ("[D]ual criminality exists if the 'essential character' of the acts criminalized by the law of each country are the same and the laws are 'substantially analogous.'") (citation omitted); see also Matter of Extradition of Sidali, 899 F. Supp. 1342, 1347 (D. N.J. 1995) ("Clearly, the alleged acts are punishable regardless of the notion of double jeopardy. The only

inquiry the Court must make here is whether the alleged crime or act is punishable in each country.") (emphasis in original).  There is no serious dispute that murdering a police officer is unlawful in both Colombia and the United States.

Finally, it appears likely that the entire predicate to Camelo-Grillo's arguments -- that the 2001 conviction constituted double jeopardy -- is not well taken.  Camelo-Grillo repeatedly claims that he was "acquitted in 1995" of the murder of Officer Gutierrez-Garcia.  (See, e.g., Opp. at 4).  However, the Supreme Court of Justice, Criminal Cassation Bench, did not acquit Camelo-Grillo when it vacated his murder convictions -- it merely declared them to be a nullity on the procedural ground that they were investigated and tried in the wrong court.  (Exh. C at 49).  The court specifically referred the matter of Officer Gutierrez-Garcia's murder to the "Regional Prosecution Offices" for further proceedings.  (Id. at 50).  Furthermore, Judge Blanco-Diagama's legal opinion letter affirms that "there was no double incrimination" in Camelo-Grillo's 2001 conviction, (Reply Exh. A at 13), and that Camelo-Grillo's due process rights were "respected in the case."  (Id. at 14).  The Court need not and does not reach whether Camelo-Grillo's double jeopardy rights under Colombian law were violated by his 2001 conviction.  See Skaftouros, 667 F.3d at 156 (judges presiding over section 3184 proceedings should "avoid making determinations regarding foreign law").  However, even if it were appropriate or necessary to do so, which it is not, it would appear that there was no violation.  Accordingly, Camelo-

Grillo's double jeopardy arguments do not persuade the Court that Camelo-Grillo is ineligible for extradition.

**2.     International Covenant Of Civil And Political Rights**

Camelo-Grillo also summarily argues that Article 14(7) of the ICCPR bars his extradition.  (Opp. at 7-8).  According to Camelo-Grillo, Article 14(7) provides that "[n]o one shall be liable to be tried or punished again for an offense for which he has already been finally convicted or acquitted . . . ."  (Id.).  Camelo-Grillo has not shown that his rights against double jeopardy were violated.  Even if he had, the ICCPR would offer no protection in this proceeding.

"[A] relator seeking to block extradition by relying on an international agreement must show, at a minimum, that the agreement upon which he relies establishes a judicially enforceable right."  Patterson v. Wagner, 785 F.3d 1277, 1284 (9th Cir. 2015).  As the Supreme Court has explained, "while treaties "'may comprise international commitments . . . they are not domestic law unless Congress has either enacted implementing statutes or the treaty itself conveys an intention that it be 'self-executing' and is ratified on these terms.'"  Medellin v. Texas, 552 U.S. 491, 505 (2008) (quoting Igartua-De La Rosa v. United States, 417 F.3d 145, 150 (1st Cir. 2005) (en banc)); see also Matter of Extradition of Cheung, 968 F. Supp. 791, 803 n.17 (D. Conn. 1997) ("It is only when a treaty is self-executing, when it prescribes rules by which private rights may be determined, that it may be relief for

25

enforcement of such rights.") (internal quotation marks omitted).
A "self-executing" treaty "has automatic domestic effect as federal
law upon ratification. Conversely, a 'non-self-executing' treaty
does not by itself give rise to domestically enforceable federal
law. Whether such a treaty has domestic effect depends upon
implementing legislation passed by Congress." <u>Medellin</u>, 552 U.S.
at 505 n.2.

It is well settled that the ICCPR does not provide any
enforceable right in extradition proceedings because the ICCPR "was
ratified 'on the express understanding that it was not self-
executing and so did not itself create obligations enforceable in
the federal courts.'" <u>Serra v. Lappin</u>, 600 F.3d 1191, 1197 (9th
Cir. 2010) (quoting <u>Sosa v. Alvarez-Machain</u>, 542 U.S. 692, 735,
(2004) (footnote omitted)); <u>see also</u> <u>Hain v. Gibson</u>, 287 F.3d 1224,
1243 (10th Cir. 2002) ("When the Senate ratified the ICCPR, it
specifically declared that the provisions thereof were not self-
executing" and, "since that time, Congress has never enacted
implementing legislation for the ICCPR.") (internal quotation marks
and citation omitted). "As a non-self-executing treaty, the ICCPR
is not judicially enforceable, and therefore, does not provide
. . . a defense to this extradition proceeding." <u>Hurtado</u>, 622 F.
Supp. 2d at 1357. Accordingly, even if Camelo-Grillo's 2001
conviction had violated his rights against double jeopardy, the
ICCPR would not bar his extradition.

\\

\\

\\

26

**III.**

**CERTIFICATION AND ORDER**

IT IS HEREBY CERTIFIED TO THE SECRETARY OF STATE that the evidence against Edgar Orlando Camelo-Grillo is sufficient to sustain the charge of murder against him in Colombia under the applicable Treaty and protocol; that Camelo-Grillo is extraditable under the aforesaid Treaty and protocol; and that further proceedings in extradition may be conducted.

The extradition request and the supporting documents admitted into evidence during the hearing are properly certified and authenticated. Accordingly, the Court certifies the above findings, and all documents admitted into evidence, to the Secretary of State, pursuant to 18 U.S.C. § 3184.

THIS COURT HEREBY CERTIFIES that it has found Edgar Orlando Camelo-Grillo extraditable to the Republic of Colombia. A warrant may be issued, upon the requisition of the proper authorities of the Republic of Colombia, for the surrender of Edgar Orlando Camelo-Grillo according to the Extradition Treaty.

IT IS FURTHER ORDERED that Edgar Orlando Camelo-Grillo is committed to the custody of the United States Marshal, to be confined without bail until the surrender of Edgar Orlando Camelo-Grillo to the Government of Colombia can be effectuated. 18 U.S.C. § 3184.

1    IT IS FURTHER ORDERED that the United States Attorney for the
2  Central District of California shall obtain all testimony and
3  exhibits presented before this Court and shall deliver forthwith
4  the transcripts and evidence to the Clerk of the Court.  The Clerk
5  of the Court shall forward to the Secretary of State a copy of this
6  Certification and Order together with the transcripts of testimony
7  and copies of documents received as evidence.

8
9    IT IS SO ORDERED.

10
11 DATED:  July 10, 2017
12                                        /S/
                                    _____
                                    SUZANNE H. SEGAL
13                                  UNITED STATES MAGISTRATE JUDGE